UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

'05 AUG -9 P2:12

UNITED STATES OF AMERICA,

    Plaintiff,

SOFRON B. NEDILSKY
CLERK

Case No. 04-CR-241

vs.

Green Bay Division

NING WEN (a/k/a Wen Ning),

    Defendant.

## THIRD SUPERSEDING INDICTMENT

**THE GRAND JURY CHARGES:**

### COUNT ONE: Conspiracy

1. Between on or about March 16, 1992, and on or about September 30, 2004, beginning in California and continuing in the State and Eastern District of Wisconsin, and elsewhere,

**NING WEN (a/k/a Wen Ning)**

did knowingly conspire with persons known and unknown to the grand jury, to commit offenses against the United States by violating export restrictions in the shipment of items to the People's Republic of China (hereafter "PRC").

### Export Restrictions

2. The conspiracy included willful violations of the following statutes, regulations, and presidential orders:

    a) The Export Administration Act of 1979 (hereafter "EAA"), as

amended, Title 50, United States Code, Appendix, section 2401 et seq.;

  b) Title 50, United States Code, section 1705(b);

  c) Export Administration Regulations (hereafter "EAR"), Title 15, Code of Federal Regulations (hereafter "C.F.R."), Parts 730-774;

  d) Presidential Executive Orders under the International Emergency Economic Powers Act (Title 50, United States Code, sections 1701-1706 (1991 and Supp. 1999)) (otherwise known as "IEEPA"), including Executive Order 12924 (3 C.F.R., 1994 Comp. 917 (1995)), extended by Presidential Notices of August 15, 1995 (3 C.F.R., 1995 Comp. 501 (1996)), August 14, 1996 (3 C.F.R., 1996 Comp. 298 (1997)), August 13, 1997 (3 C.F.R., 1997 Comp. 306 (1998)), August 13, 1998 (3 C.F.R., 1998 Comp. 294 (1999)), and August 10, 1999 (64 Fed. Reg. 44101 (August 13, 1999)), all of which invoked his authority under IEEPA to continue the EAR in effect during a lapse of the EAA on August 20, 1994; and Executive Order 13222 of August 17, 2001 (3 C.F.R., 2001 Comp., p. 783 (2002)), as extended by the Notice of August 7, 2003 (68 Fed. Reg. 47833, August 11, 2003), and the Notice of August 6, 2004, (69 Fed. Reg. 48763, August 10, 2004), which continued the EAR in effect under IEEPA.

  3. The combined effect of the above-listed legal provisions was to provide the public with a list of "restricted" items that could not be exported from the United States to certain countries, including the PRC, without express authorization from the government of the United States through an export license.

4.  The above-listed legal provisions also imposed disclosure requirements on all exports to the PRC, including the requirement to file a "Shipper's Export Declaration" if the item required an export license and/or the value of an export exceeded $2,500.

## Object of the Conspiracy

5.  As part of the conspiracy, the defendant sought to export restricted items from the United States to the PRC in violation of these laws by willfully:

   a) failing to obtain the proper export licenses for certain shipments;

   b) providing false descriptions and/or withholding required information on the invoices provided to the shippers;

   c) concealing the ultimate destination for certain items; and

   d) understating the value of certain shipments to avoid disclosure obligations for values exceeding $2,500.

3

## Background and Identification of the Conspirators

6. Defendant Ning Wen was born in the PRC. From March 16, 1992, until September 1993, Wen worked and resided in California. Beginning in September 1993, and continuing through to the date of this Indictment, Wen resided in Manitowoc, Wisconsin. Wen became a United States citizen in 2000.

7. Co-conspirator Hailin Lin is the wife of Ning Wen. She also was born in the PRC. She became a United States citizen in 2001.

8. In April 1992, Wen and Lin formed Wen Enterprises for the purpose of obtaining and exporting integrated circuits. Wen Enterprises was primarily operated out of their home in Manitowoc, Wisconsin.

9. Co-conspirator Jian Guo Qu is a male citizen and resident of the PRC.

10. Co-conspirator Ruo Ling Wang is the wife of Qu and a resident of the PRC.

11. Qu and Wang are employees at the Beijing Rich Linscience Electronics Company (hereafter "BRLE") in Beijing, PRC.

4

## Description of the Conspiracy

12. Beginning on or about March 16, 1992, while living in California, Wen began sending integrated circuits, some of which he was informed were restricted items, from the United States to Qu in the PRC.

13. The process among the conspirators generally involved the following pattern:

a) Qu, Wang and others at BRLE collected orders from others in the PRC for the purchase of integrated circuits and other electronic components. These orders would then be communicated to Wen Enterprises via facsimile and telephone calls.

b) Wen obtained price quotes on these circuits from United States suppliers. The price quotes were communicated to Qu, Wang and others at BRLE.

c) Wen purchased the circuits from the United States sources and had them shipped to him. The orders included both restricted and unrestricted items.

d) Wen repackaged the items before shipping them to BRLE. As part of obtaining, repackaging and shipping items to the PRC, Wen knowingly and willfully:

> (i) failed to obtain the proper export licenses for certain shipments;
>
> (ii) provided false descriptions and/or withheld required information on shipping invoices; and

5

(iii) concealed the ultimate destination for certain items.

14. In order to pay for the items to be exported, Qu arranged for payments to be wired to Wen Enterprises using sources other than BRLE. The sources included the China National Packaging Base Construction Company, which was located in the PRC, and an individual, Ms. Tsui Kan, located in Hong Kong.

15. After Wen commenced outside employment in Wisconsin, Lin took over day-to-day responsibility for Wen Enterprises. Lin and Wen consulted during the time period of the conspiracy regarding the export business, Lin's role, and payments from Qu. In addition, Wen occasionally met with Qu and Wang in China and/or discussed Wen Enterprises business with them via telephone and email.

16. During the years 1995-2004, Wen occasionally hand-carried items between Lin and Qu or Wang.

17. Qu and Wang were aware that the exports involved fraudulent acts undertaken by Wen and Lin. At various times during the conspiracy, the conspirators discussed among themselves the nature of the false documentation and how to avoid detection. In 2004, the conspirators discussed how to understate the value of certain shipments to avoid having to file Shipper's Export Declarations.

18. During the time period of the conspiracy, from January 2002, through September 2004, approximately $1.9 million was transferred from BRLE to a bank account of Wen Enterprises in Manitowoc.

19. Wen and Lin shared the net profit from these transactions.

6

## Acts in Furtherance of the Conspiracy

20. On or about the following dates, in the State and Eastern District of Wisconsin and elsewhere, Hailin Lin did cause the following shipments to be sent from the United States to the PRC without the required export licenses:

|    | Date | Restricted Part Number | Quantity |
|----|------|------------------------|----------|
| a) | July 27, 2004 | AD9430BSV-170 | 120 |
| b) | Sept. 3, 2004 | AD9236BRU-80 | 4 |
| c) | Sept. 3, 2004 | AD9236BCP-80 | 4 |
| d) | Sept. 17, 2004 | AD9226ARS | 83 |

21. On or about the following dates, in the State and Eastern District of Wisconsin and elsewhere, Hailin Lin, in consultation with Ning Wen and Jian Guo Qu, did cause the following shipments to be sent from the United States to the PRC. The shipments included false representations regarding the true value of the shipments:

|    | Date | Price Reported | Actual Price |
|----|------|----------------|--------------|
| a) | May 21, 2004 | $2,469.60 | $11,328.70 |
| b) | July 16, 2004 | $2,427.50 | $10,450.20 |
| c) | July 27, 2004 | $2,457.60 | $20,399.90 |
| d) | Sept. 3, 2004 | $2,475.60 | $9,610.00 |

22. On May 28, 2004, in the State and Eastern District of Wisconsin, and

7

elsewhere, Ning Wen conducted a telephone conversation with Hailin Lin wherein Wen advised Lin how to obtain payments from Qu.

23. On or about July 3, 2004, in the State and Eastern District of Wisconsin, and elsewhere, Ning Wen sent an email to Hailin Lin and Qu Jian Guo informing them that individuals had been arrested in New Jersey for illegally exporting controlled items to the PRC.

24. On or about July 6, 2004, in the State and Eastern District of Wisconsin, and elsewhere, Ning Wen conducted a telephone conversation with Hailin Lin wherein they discussed the email and methods to avoid detection.

25. On or about July 24, 2004, in the State and Eastern District of Wisconsin, and elsewhere, Ning Wen conducted a telephone conversation with Hailin Lin wherein he advised her how to manage her workload at Wen Enterprises.

All in violation of Title 18, United States Code, section 371.

8

## THE GRAND JURY FURTHER CHARGES:

### COUNT TWO: Export Violation

1. The allegations at paragraphs 2 through 4 of Count One are incorporated herein.

2. On or about September 3, 2004, in the State and Eastern District of Wisconsin, and elsewhere,

### NING WEN (a/k/a Wen Ning)

did knowingly and willfully cause the export of restricted items to the PRC without the required export license.

3. The restricted items are identified as Part Numbers AD9236BRU-80 and AD9236BCP-80.

All in violation of Title 50, United States Code, section 1705(b), Title 18, United States Code, section 2, and Title 15, Code of Federal Regulations, section 764.2(a).

9

<03><09/05 TUE 15:03 FAX 414 297 3203    USDC ED of WI

## THE GRAND JURY FURTHER CHARGES:

### COUNT THREE: Export Violation

1.  The allegations at paragraphs 2 through 4 of Count One are incorporated herein.

2.  On or about September 17, 2004, in the State and Eastern District of Wisconsin, and elsewhere,

**NING WEN (a/k/a Wen Ning)**

did knowingly and willfully cause the export of a restricted item to the PRC without the required export license.

3.  The restricted item is identified as Part Number AD9226ARS.

All in violation of Title 50, United States Code, section 1705(b), Title 18, United States Code, section 2, and Title 15, Code of Federal Regulations, section 764.2(a).

10

Case 1:04-cr-00241-WCG   Filed 08/09/05   Page 10 of 19   Document 191

## THE GRAND JURY FURTHER CHARGES:

### COUNT FOUR: Export Violation

1. The allegations at paragraphs 2 through 4 of Count One are incorporated herein.

2. On or about July 27, 2004, in the State and Eastern District of Wisconsin, and elsewhere,

### NING WEN (a/k/a Wen Ning)

in connection with the preparation of an export control document, did knowingly and willfully make a false statement to, and conceal a material fact from, the Department of Commerce, Bureau of Industry and Security, and the United States Customs Service, indirectly through another.

3. In particular, the value of the shipment represented on the shipping invoice was $2,457.60, when in fact, the true value of the shipment exceeded $20,000.

All in violation of Title 50, United States Code, section 1705(b), Title 18, United States Code, section 2, and Title 15, Code of Federal Regulations, section 764.2(g).

11

## THE GRAND JURY FURTHER CHARGES:

### COUNT FIVE: Export Violation

1. The allegations at paragraphs 2 through 4 of Count One are incorporated herein.

2. On or about September 3, 2004, in the State and Eastern District of Wisconsin, and elsewhere,

### NING WEN (a/k/a Wen Ning)

in connection with the preparation of an export control document, did knowingly and willfully make a false statement to, and conceal a material fact from, the Department of Commerce, Bureau of Industry and Security, and the United States Customs Service, indirectly through another.

3. In particular, the value of the shipment represented on the shipping invoice was $2,475.60, when in fact, the true value of the shipment exceeded $9,000.

All in violation of Title 50, United States Code, section 1705(b), Title 18, United States Code, section 2, and Title 15, Code of Federal Regulations, section 764.2(g).

12

## THE GRAND JURY FURTHER CHARGES:

### COUNT SIX: Money Laundering Conspiracy

1. Between on or about March 16, 1992, and on or about September 30, 2004, in the State and Eastern District of Wisconsin, and elsewhere,

### NING WEN (a/k/a Wen Ning)

did knowingly conspire with persons known and unknown to the grand jury to commit money laundering by transmitting and transferring funds from the PRC and Hong Kong to a place in the United States with the intent to promote the carrying on of a specified unlawful activity.

2. The specified unlawful activity included violations of the export restrictions set forth in paragraph 2 of Count One above.

3. The funds were to be used, in part, to purchase restricted items for BRLE.

All in violation of Title 18, United States Code, sections 2, 1956(a)(2)(A), and 1956(h).

13

## THE GRAND JURY FURTHER CHARGES:

### COUNT SEVEN: Money Laundering

1.     On or about May 27, 2004, in the State and Eastern District of Wisconsin, and elsewhere,

### NING WEN (a/k/a Wen Ning)

did knowingly cause funds to be transmitted and transferred from the PRC to a place in the United States with the intent to promote the carrying on of a specified unlawful activity.

2.     The specified unlawful activity included violations of the export restrictions set forth in paragraph 2 of Count One above.

3.     The funds included approximately $33,353 sent from the PRC to a bank account of Wen Enterprises in Manitowoc, Wisconsin.

4.     The funds were to be used, in part, to purchase restricted items for BRLE.

All in violation of Title 18, United States Code, sections 2 and 1956(a)(2)(A).

14

## THE GRAND JURY FURTHER CHARGES:

### COUNT EIGHT: Money Laundering

1. On or about June 16, 2004, in the State and Eastern District of Wisconsin, and elsewhere,

### NING WEN (a/k/a Wen Ning)

did knowingly cause funds to be transmitted and transferred from Hong Kong to a place in the United States with the intent to promote the carrying on of a specified unlawful activity.

2. The specified unlawful activity included violations of the export restrictions set forth in paragraph 2 of Count One above.

3. The funds included approximately $49,967 sent from Hong Kong to a bank account of Wen Enterprises in Manitowoc, Wisconsin.

4. The funds were to be used, in part, to purchase restricted items for BRLE.

All in violation of Title 18, United States Code, sections 2 and 1956(a)(2)(A).

15

## THE GRAND JURY FURTHER CHARGES:

### COUNT NINE: False Statements

1.  On or about September 30, 2004, in the State and Eastern District of Wisconsin,

### NING WEN (a/k/a Wen Ning),

the defendant herein, did knowingly and willfully make false, fraudulent, and fictitious material statements and representations.

2.  The statements were that:

    a.  Wen only obtained computer chips for Qu one or two times prior to March 16, 1992;

    b.  Wen Enterprises' profit is only five percent on the items sold to BRLE; and

    c.  Wen Enterprises is in compliance with all tax laws.

3.  At the time the statements were made, the defendant knew that the statements were false, because, as the defendant well knew:

    a.  Wen obtained and sold computer chips to Qu approximately twelve times prior to March 16, 1992;

    b.  Wen Enterprises' annual profit is approximately twenty-five percent on items sold to BRLE; and

    c.  Wen and Lin have underreported their income from Wen Enterprises on their federal tax returns.

16

4. The statements and representations were made to agents from the Federal Bureau of Investigation, in a matter within the jurisdiction of the Federal Bureau of Investigation, an agency within the executive branch of the government of the United States.

All in violation of Title 18, United States Code, Section 1001.

## **FORFEITURE PROVISIONS**

The United States seeks forfeiture of all property of defendant Ning Wen involved in the offenses set forth in Counts Six, Seven, and Eight or any property traceable to such property, as authorized by Title 18, United States Code, § 982(a)(1).

The property subject to forfeiture includes, but is not limited to:

a. the balance of funds in account number 2203003690, maintained at Associated Bank, N.A., Manitowoc, Wisconsin, in the name of Wen Enterprises,

b. the balance of funds in account number 2207010105 maintained at Associated Bank, in the name of Ning Wen or Hailin Lin;

c. the balance of funds in SEP IRA account number 2908064261 maintained at Associated Bank, in the name of Ning Wen;

d. the balance of funds in SEP IRA account number 2908062277 maintained at Associated Bank in the name of Ning Wen;

e. the balance of funds in account number 6006015969 maintained at First Federal Capital Bank in the name of Hailin Lin or Ning Wen;

f. the balance of funds in account number 3008038475 maintained at First Federal Capital Bank in the name of Hailin Lin or Ning Wen; and

g. the real property at 402 Wild Oak Drive, Manitowoc, Wisconsin.

Pursuant to Title 21, United States Code, Section 853(p), as incorporated

18

by Title 18, United States Code, Section 982(b), the defendant shall forfeit substitute property, up to the value described in the preceding paragraph, if by any act or omission of the defendant, the property described in the preceding paragraph, or any portion thereof, cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the court; has been substantially diminished in value; or has been commingled with other property that cannot be subdivided without difficulty.

A TRUE BILL:

_____
FOREPERSON

Dated: _____8-9-05_____

_____
STEVEN M. BISKUPIC
United States Attorney