UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

  v.                                    Case No. 04-CR-241

NING WEN,

        Defendant.

**ORDER DENYING DEFENDANT'S RULE 29
MOTION FOR JUDGMENT OF ACQUITTAL AND NEW TRIAL**

On October 13, 2004, a grand jury in this district returned an eight-count indictment charging United States citizens Ning Wen and his wife Hailin Lin, and Chinese nationals Jian Guo Qu and his wife Ruo Ling Wang with conspiracy to commit offenses against the United States and related export and money laundering violations. On March 22, 2005, a superseding indictment was returned which removed the sentencing allegations of the original indictment and made several changes to the language in Counts Four and Five. On July 12, 2005, a second superseding indictment was returned, which removed co-defendant Hailin Lin, Jian Guo Qu and Ruo Ling Wang, and made several substantive changes to the existing counts. It also added Count Nine, which alleged that Wen had made false statements to the FBI in violation of Title 18, United States Code, Section 1001. A third superseding indictment was returned on August 9, 2005. That indictment changed the scope of the conspiracy charge by limiting the allegations to acts occurring after March 16, 1992.

The case against Wen was tried to a jury commencing on September 14, 2005. At the close of the government's case, and again at the close of all evidence, the defendant moved for judgment of acquittal pursuant to Fed. R. Crim. P. 29 on all counts. The court denied the motion as to Counts One through Eight, but reserved ruling on Count Nine. All nine counts were submitted to the jury, which returned a verdict of guilty as to each count. Defendant now renews his motion to dismiss Count Nine for insufficiency of evidence, and further argues that a new trial should be granted on the remaining counts on the ground that admission of evidence as to the false statement count was unfairly prejudicial and tainted the jury. For the reasons that follow, defendant's motion will be denied.

Count Nine of the Third Superseding Indictment charged that Wen knowingly and willfully made false, fraudulent and fictitious material statements and representations to Special Agent Mark Dinkel of the Federal Bureau of Investigation (FBI). The allegedly false representations were:

>   1) Wen only obtained computer chips for Qu one or two times prior to March 16, 1992;
>   2) Wen Enterprises' profit is only five percent on items sold to BRLE; and
>   3) Wen Enterprises is in compliance with all tax laws.

The statements were made during the course of an interview of Wen by SA Dinkel as other agents involved in the investigation were executing a search warrant on Wen's home and seizing business and computer records relating to the alleged conspiracy to violate U.S. export restrictions with China. The government argued that Wen made the statements in an effort to deflect attention from the criminal conduct both he and his wife had been involved in since the early 1990s. Specifically, the claim that he had obtained computer chips for Qu on only one or two occasions prior to 1992 was intended to minimize his personal involvement in the enterprise. In fact, the government

contended, Wen had obtained chips for Qu on at least twelve occasions before he left the Chinese Consulate on March 16, 1992. And Wen's statements concerning the amount of profit Wen Enterprises received and its compliance with tax laws were intended to mislead investigators as to the motive he and his wife had for engaging in the very conduct for which they were under investigation. The government claimed that in fact Wen Enterprises' profit on the restricted parts exported to China was approximately 21% and that throughout the period from 1996 to 2003 Wen Enterprises was substantially under-reporting its income.

In finding Wen guilty of making false statements, the jury found that the government had met its burden of proof only as to Wen's statements that he had obtained computer chips for Qu on only one or two occasions prior to March 16, 1992, and that Wen Enterprises was in compliance with all tax laws. (Doc. # 262 at 3.) Wen argues that even as to these statements the evidence was insufficient as a matter of law and that evidence relating to tax issues unfairly prejudiced the jury against him on the remaining counts. For these reasons, Wen argues he is entitled to dismissal of Count Nine and a new trial on Counts One through Eight.

In deciding a Rule 29 motion for acquittal, the court must consider the evidence in the light most favorable to the government and make all inferences in its favor. To sustain a finding of guilty, there must be substantial evidence that tends to show that the defendant is guilty beyond a reasonable doubt. *United States v. Fearn*, 589 F.2d 1316, 1320-21 (7th Cir. 1978). "Stated another way, a judgment of acquittal should only be granted if the evidence, looked at in the government's favor, is so scant that the jury could only speculate as to the defendant's guilt." *United States v. Howard*, 179 F.3d 539, 542 (7th Cir. 1999).

To sustain a verdict of guilty as to Count Nine in this case, the government was required to prove the following four elements beyond a reasonable doubt:

> First, the defendant made a false, fictitious, or fraudulent statement or representation;
>
> Second, the statement or representation was material;
>
> Third, the statement or representation was made knowingly and willfully; and
>
> Fourth, the statement or representation was made in a matter within the jurisdiction of the executive branch of the government of the United States.

Seventh Circuit Pattern Jury Instruction, 18 U.S.C. § 1001 (Making a False Statement or Representation – Elements).

In arguing that the evidence was insufficient as a matter of law to support a finding of guilty as to either of the statements upon which the jury based its verdict for Count Nine, the defendant argues that neither statement was sufficiently clear and definite. The statement concerning the number of times he had obtained computer chips for Qu prior to March 16, 1992, Wen argues, was made in the context of a four-hour interview and "[t]he jury could not be sure whether Mr. Wen and Agent Dinkel were talking about shipments to individuals other than Mr. Qu or whether the statements were made with respect to 1991." (Def.'s Reply at 5.) Moreover, because the statement related to events that occurred more than thirteen years earlier, Wen argues that the evidence failed to demonstrate that he made the statement knowing it to be untrue when made. (*Id.* at 6.) Wen also argues the evidence is insufficient to establish that the number of sales to Qu prior to March 16, 1992, was material. For all of these reasons, Wen contends that evidence of the alleged statement concerning prior shipments to Qu cannot support a finding of guilty as to Count Nine.

4

Similarly, with respect to his statement that Wen Enterprises was in compliance with all tax laws, Wen argues that the statement is so broad as to be meaningless. He contends he and his wife were in compliance with tax laws in that they made quarterly payments of their estimated taxes to the IRS and were current with their payments. Since this is all he may have meant by the statement attributed to him, Wen argues the evidence is insufficient to support a guilty verdict. And as with the statement concerning his previous sales to Qu, Wen argues there was insufficient evidence of materiality to permit a verdict of guilty. Furthermore, because the evidence that he under-reported the income of Wen Enterprises was otherwise irrelevant to the case, it should not have been admitted at all. Wen argues that this evidence served only to prejudice the jury against him and for this reason, he should be granted a new trial on the remaining counts.

The evidence presented by the government was sufficient to support a finding that Wen was guilty of making a false statement to a federal agent when he told SA Dinkel that he had only obtained computer chips for Qu on one or two previous occasions. Wen's relationship to Qu was central to the investigation. Qu was the principal of the Chinese company for which Wen Enterprises was accused of obtaining restricted components. When SA Dinkel interviewed Qu, he had not yet viewed the documentation seized from Wen's home detailing the number of transactions and the full extent of the conspiracy. The evidence was sufficient to allow the jury to conclude that by claiming that he had only shipped parts to Qu on one or two occasions prior to leaving the Chinese consulate and that his wife took over the business shortly thereafter, Wen was attempting to distance himself from any involvement in the illegal shipments. Wen's argument that he may have been confused by the question Dinkel asked or forgotten events that occurred more than thirteen years earlier go to the weight of the evidence, not its sufficiency. The jury could have

5

concluded from the evidence that Wen did not knowingly and willfully make a false statement to SA Dinkel, but the evidence was not such as to require such a conclusion.

Likewise on the issue of materiality, the jury was instructed that "a statement is material if it had the effect of influencing the action of the agency, or was capable of or had the potential to do so." (Doc. # 260 at 14.) The Supreme Court has recognized that "the materiality inquiry, involving as it does delicate assessments of the inferences a reasonable decisionmaker would draw from a given set of facts and the significance of those inferences to him, is peculiarly one for the trier of fact." *United States v. Gaudin*, 515 U.S. 506, 512 (1995) (internal quotations and brackets omitted). Here, the government argued that Wen's claim that he had only obtained computer chips for Qu on one or two occasions when he was at the Chinese consulate, instead of the approximately one dozen times reflected in the records obtained in the course of the investigation, was material to the alleged conspiracy it was investigating at the time. When considered with Wen's further claim that he turned over the day-to-day operation of the business to his wife in 1993 and thus had little knowledge of the specific items she was exporting, this evidence was sufficient to allow a jury to consider the charge.

The jury also found Wen guilty of Count Nine based on his statement to SA Dinkel that Wen Enterprises was in compliance with all tax laws. (Doc. # 262 at 3.) In support of its claim that this statement constituted a violation of 18 U.S.C. § 1001, the government introduced evidence that Wen had under-reported the gross receipts of Wen Enterprises on its tax returns by approximately $500,000 over five years. The government contends that Wen under-reported money received as proceeds of illegal activity and money laundering. At the time the statement was made, Wen, his wife and their company were the subject of an inter-agency investigation being conducted by the

6

FBI, the Bureau of Industry and Security of the Department of Commerce, the Bureau of Immigration and Customs Enforcement and the Criminal Investigation Division of the Internal Revenue Service. The government argues that Wen's statement concerning his company's compliance with tax laws was made in an effort to convince SA Dinkel that his arrest was a mistake and that Wen Enterprises was a law-abiding company. His statements, the government contends, "were positive and affirmative, and were calculated to pervert the authorized functions of government." (Govt.'s Resp. at 10.) (*quoting United States v. Isaacs*, 493 F.2d 1124, 1158 (7th Cir. 1974).

Wen suggests that this statement is too general to serve as the basis for a violation of § 1001. He argues that it was intended to refer to the fact that he and his wife paid quarterly estimated taxes for the income of Wen Enterprises and had nothing to do with the amount of income they were reporting. (Def.'s Reply at 4.) Wen also argues there was insufficient evidence that he knew that the income of Wen Enterprises was under-reported. Thus, Wen argues the evidence concerning this statement was insufficient to support a finding of guilty as to Count Nine.

It is true that the statement Wen was alleged to have made concerning Wen Enterprises' compliance with tax laws was general. But Wen cites no authority in support of his suggestion that a general statement cannot provide the basis for a charge under § 1001. Here, the jury considered the general statement Wen was alleged to have made that his company was in compliance with all tax laws in light of the evidence adduced by the government that they under-reported its gross receipts by approximately $500,000 over a five year period. On the basis of this evidence, the jury could reasonably find Wen's statement that the business was in compliance with tax laws was false. The government also introduced evidence that showed Wen was continuously involved in the

7

business, which was run out of their home, and that he was particularly concerned with the financial aspect of the business. He also signed the tax returns for the years in question. From this evidence the jury could conclude Wen knew his statement was false.

Wen also argues that evidence relating to tax violations was unfairly prejudicial and that Count Nine, at least as it applies to the alleged statement concerning compliance with tax laws, should have been severed. In a decision issued shortly before trial, the court denied Wen's motion to sever Count Nine ruling in part that Wen would not be prejudiced because the government intended to introduce the same evidence to prove the export violation and money laundering counts. The government argued that evidence of Wen's under-reporting of income was relevant to the conspiracy to violate export restrictions charged in Count One because it showed his knowledge that the conduct was illegal. It was the government's contention that Wen and his wife under-reported the income attributable to Wen Enterprises in order to hide the proceeds of their crime from the government and reduce the risk of an IRS audit which might have uncovered their crimes. As the government argued in its brief in opposition to Wen's motion to exclude such evidence, "this conduct reflects attempts by co-conspirators to 'fly under the radar' of the United States government, to avoid scrutiny for their illegal conduct." (Doc. # 234 at 5.)

As the parties acknowledge in their briefs, at the close of the fourth day of trial the court expressed concern that evidence of under-reporting of income appeared unrelated to the export violation and money laundering conspiracies and related counts. Absent some relevance to the other counts, the court expressed concern that the introduction of such evidence had resulted in unfair prejudice to the defendant. Notwithstanding these misgivings, the court concludes that Wen was not unfairly prejudiced by the admission of evidence relating to his under-reporting of income. The

8

government introduced evidence that Wen was concerned that the business would be subject to an IRS audit if its income continued to increase. At one point, he considered an audit unavoidable. (Ex. 127A.) By under-reporting income received by Wen Enterprises, the defendants presumably would have been better able to hide the fact that a substantial portion of the income Wen Enterprises received was for exporting restricted electrical components in the event an audit was performed. Thus, the evidence was relevant to the government's theory that Wen and his wife under-reported income as part of their effort to conceal their illegal conduct. Evidence that Wen was aware of the illegality of certain shipments was directly relevant to Wen's principal defense that he did not know what his wife was doing. Although the relevance was not as clear as it initially appeared it would be prior to trial, the court concludes Wen was not unfairly prejudiced. The court also notes that the jury was instructed to consider each count and the evidence relating to it separately and that its verdict on one count should not control its verdict on any other. (Doc. # 260 at 21.) Based on the presumption that the jury followed the instructions, the court concludes no unfair prejudice occurred.

For all of these reasons, Wen's Rule 29 motion for judgment of acquittal on Count Nine and for a New Trial on the remaining counts is therefore denied.

**SO ORDERED.**

Dated this   4th   day of November, 2005.

 s/ William C. Griesbach
William C. Griesbach
United States District Judge

9

Case 1:04-cr-00241-WCG   Filed 11/07/05   Page 9 of 9   Document 275